UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROSATI'S FRANCHISING, INC., ANTHEM WAY ROSATI'S, INC., and ROSATI'S FRANCHISE SYSTEMS, INC., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| FIRE IT UP, LLC, an Arizona limited liability company; KEVIN DOUKAS, individually; DONNA KUTARNIA, individually; and TROY WOLVER, individually, | ) ) ) ) ) ) |
| Defendants. | ) |

No. 15 C 2230

Judge Sara L. Ellis

## OPINION AND ORDER

This case arises out of the failed business relationship between franchisor Rosati's Franchising, Inc. ("Rosati's") and its former franchisee Fire It Up, LLC ("Fire It Up"). The dispute concerns their now-terminated franchise agreement, which granted Fire It Up the right to operate a Rosati's pizza location and use Rosati's Franchise Systems, Inc.'s ("RFSI") trademarks at that location in Scottsdale, Arizona. Rosati's, RFSI, along with Anthem Way Rosati's, Inc. ("Anthem Way"), which had previously operated the Rosati's location bought by Fire It Up, brought suit against Fire It Up and its members, Kevin Doukas, Donna Kutarnia, and Troy Wolver, alleging trademark infringement, false advertising, unfair competition, breach of the franchise agreement, and violation of the Illinois Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act, seeking damages and to prevent Defendants from using RFSI's trademarks and otherwise representing themselves as connected to Rosati's. Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) or, in the

alternative to transfer venue pursuant to 28 U.S.C. § 1406(a) or 1404(a) [36]. Although the Court finds that it has personal jurisdiction over Defendants and that venue is proper because the forum selection clause contained in the franchise agreement is valid, the Court nevertheless finds that transfer to the District of Arizona under § 1404(a) is appropriate in the interest of justice and for the convenience of non-party witnesses.

## BACKGROUND[1]

Rosati's is an Illinois corporation that franchises Rosati's pizza locations across the country, including in Illinois, Nevada, and Arizona. There are currently approximately 120 Rosati's locations. Rosati's is the licensee of certain trademarks owned by RFSI. Since 1995, franchisees have been granted exclusive licenses to use the Rosati's name and marks as part of their franchise agreements with Rosati's.

Rosati's entered into a franchise agreement with Fire It Up on May 5, 2014, granting Fire It Up the right to operate a Rosati's pizza franchise at 10855 N. 116th Street in Scottsdale, Arizona. The franchise agreement includes the following forum selection clause:

> **Governing Law/Consent to Jurisdiction.** Except to the extent governed by the United States Trademark Act of 1946 (Lanham Act 15 U.S.C. Section 1051 Et. Seq.), this Agreement and the franchise shall be governed by the internal laws of the State of Illinois (without reference to its choice of law and conflict of law rules), except that the provisions of any franchise law of such state shall not apply unless the jurisdictional requirements of said law have been met independently of this provision. Franchisee irrevocably submits to the exclusive jurisdiction of any state or federal court of jurisdiction located in the State of Illinois and

---

[1] In addressing Defendants' motion to dismiss, the Court is not limited to the pleadings. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (personal jurisdiction); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005) (venue). Therefore, the facts in this section are taken from the first amended complaint and the additional documents submitted by the parties. The Court resolves all factual conflicts and draws all reasonable inferences in Plaintiffs' favor. *Purdue Research Found.*, 338 F.3d at 782–83; *Harris v. comScore, Inc.*, 825 F. Supp. 2d 924, 926 (N.D. Ill. 2011).

> waives any objection Franchisee may have to either the jurisdiction or venue of such court.

Ex. B to Compl. § 16.C.[2] The franchise disclosure document, which was provided to Fire It Up prior to the franchise agreement being signed, also states in a table of key provisions related to the franchise relationship that "[l]itigation must be in any state court of general jurisdiction or a federal court in Illinois (subject to state law)." Ex. B to Pls.' Resp. at 34. The individual Defendants—Doukas, Kutarnia, and Wolver— personally guaranteed the franchise agreement. In doing so, they agreed to be personally bound by and personally liable for the breach of every provision of the franchise agreement. Fire It Up also purchased an existing Rosati's location from Anthem Way.

According to Plaintiffs, Fire It Up never assumed the lease as required by its contract with Anthem Way. As a result, by December 2014, Fire It Up was locked out of the property by the landlord for non-payment of rent. Fire It Up vacated the property at that time without providing notice to Rosati's, which under the franchise agreement constituted grounds for its termination. Rosati's thus sent Fire It Up a termination notice on February 12, 2015. Fire It Up also owed Rosati's royalties and advertising fees, having reported over $40,000 per month in revenue from its business but not paid royalties and fees on these amounts as set forth in the agreement.

In response, on February 26, 2015, counsel for Fire It Up sent a cease and desist demand letter to Rosati's, asserting that Fire It Up had ownership rights in the Rosati's trade name and associated trademarks and demanding that Rosati's stop using the trade name and trademarks. Counsel also asserted that Fire It Up was seeking a new location to operate under the Rosati's

---

[2] The franchise agreement is attached to the initial complaint, Doc. 1, and not to the first amended complaint. Although technically the first amended complaint supersedes the initial complaint, because the parties discuss the franchise agreement and the Court is not limited to the pleadings, the Court cites to the franchise agreement from the initial complaint.

3

trade name. Rosati's counsel responded with a cease and desist letter of its own on March 13, 2015, the same day that the initial complaint in this case was filed by Rosati's and Anthem Way.

In addition to filing the complaint, Rosati's and Anthem Way sought a temporary restraining order ("TRO"). After a hearing, at which Defendants did not appear, the TRO was granted on March 24, enjoining Defendants from claiming any rights to use the Rosati's name or trademarks and requiring Defendants to return all of Rosati's and Anthem Way's manuals to them. Doc. 19. The TRO was converted into a preliminary injunction order on April 6, after Defendants again did not appear for that hearing. Doc. 21. A first amended complaint was filed on April 11, adding RFSI as a Plaintiff. The first amended complaint, which is the operative complaint, includes claims for trademark infringement, false advertising, unfair competition, breach of the franchise agreement, and violation of the Illinois Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a party. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue*, 338 F.3d at 782. If the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition

to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

The plaintiff also bears the burden of establishing proper venue. *Id.* The Court takes all allegations in the complaint as true but may also consider affidavits and other materials submitted by the parties. *Cont'l Cas. Co.*, 417 F.3d at 733; *Harris*, 825 F. Supp. 2d at 926. The Court resolves all factual conflicts and draws all reasonable inferences in the plaintiff's favor. *Harris*, 825 F. Supp. 2d at 926.

## ANALYSIS

**I.     Validity of Forum Selection Clause**

Defendants argue that this case should be dismissed because the Court lacks personal jurisdiction over them and the Northern District of Illinois is not a proper venue for the litigation.[3] Although Plaintiffs contend in their response to the motion to dismiss that personal jurisdiction exists separate and apart from the franchise agreement's forum selection clause, the basis asserted in the first amended complaint for jurisdiction and venue is Defendants' consent by way of the forum selection clause, which provides: "Franchisee irrevocably submits to the exclusive jurisdiction of any state or federal court of jurisdiction located in the State of Illinois and waives any objection Franchisee may have to either the jurisdiction or venue of such court."[4]

---

[3] Defendants contend that the Court should decide the venue question before the issue of whether it has personal jurisdiction over Defendants, following the Supreme Court's guidance that courts may bypass jurisdictional questions "when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 432, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007). But because the issues of personal jurisdiction and venue are intertwined, both dependent on the validity of the forum selection clause, the Court will consider the questions together.

[4] Only Rosati's and Fire It Up are parties to the franchise agreement. The individual Defendants do not argue, however, that they are not bound by the forum selection clause because they are not parties to the franchise agreement. This may be because the guaranty and assumption of obligations that each of them

5

Ex. B to Compl. § 16.C. Defendants argue that the forum selection clause is invalid and that the case should be dismissed because there is no other basis for personal jurisdiction or venue in this district.[5]

Plaintiffs' main argument is that, in entering the TRO and preliminary injunction, the Court has already determined that it has personal jurisdiction over Defendants and that venue is proper. Plaintiffs further argue that Defendants forfeited any objections they have to personal jurisdiction and venue by not contesting Plaintiffs' motions for a TRO and preliminary injunction. It is true that this Court preliminarily found it had personal jurisdiction based on the forum selection clause in granting the TRO and preliminary injunction, but those rulings were made without the benefit of Defendants' participation. The Court cannot find that Defendants forfeited their challenges to personal jurisdiction and venue, particularly where they have asserted them in this motion to dismiss—their first substantive filing made within the time period allowed for responding to the first amended complaint. *See* Fed. R. Civ. P. 12(h)(1) (defenses of lack of personal jurisdiction and improper venue are waived if not made by a Rule 12(b) motion or included in a responsive pleading or amendment allowed by Rule 15(a)(1) as a matter of course). Defendants did not participate in the TRO or preliminary injunction hearings, nor did they otherwise suggest to Plaintiffs that they agreed to defend the suit in this forum or cause the

---

signed provides that they are personally bound by every provision of the franchise agreement. *See* Ex. B to Compl. at 44; *United Airlines, Inc. v. ALG, Inc.*, 873 F. Supp. 147, 151–52 (N.D. Ill. 1995) (defendant's guarantee of performance under sublease obligated defendant to litigate disputes arising under sublease in the forum designated in the sublease). Defendants also do not argue that Anthem Way or RFSI cannot enforce the forum selection clause against them, but this again may be because Anthem Way and RFSI are alleged to be affiliated with Rosati's. *See Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436, 439 (7th Cir. 2012).

[5] Plaintiffs' response focuses on *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, a case in which the Supreme Court clarified the standards for evaluating motions to transfer a case in light of a forum selection clause. --- U.S. ----, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013). The Court will address Plaintiffs' arguments in this section to the extent they also apply to the validity and enforceability of the forum selection clause, reaching issues related to transfer in the following section, as *Atlantic Marine* presupposed a valid forum selection clause. *See id.* at 581 n.5.

Court to spend unnecessary time on the case before asserting these defenses. *See Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) ("To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking."); *cf. Johnson v. Masselli*, No. 2:07 CV 214 PPS, 2008 WL 111057, at *3 (N.D. Ind. Jan. 4, 2008) (defendants did not waive objection to venue by defending against TRO and participating in hearings and discovery related to preliminary injunction request where objection was raised in responsive pleading); *Mallard v. Mallard*, No. 90 C 3335, 1992 WL 47998, at *5 (N.D. Ill. Mar. 4, 1992) (defendants did not waive personal jurisdiction defense where, although they agreed to stipulated permanent injunction and participated in informal discovery, they did not participate at preliminary injunction hearing and asserted defense upon filing appearance and motion to dismiss). Thus, no forfeiture occurred and a more in-depth discussion of the issues is appropriate in light of Defendants' briefing.

To determine whether the forum selection clause is valid, the Court looks to Illinois law, the law that governs the dispute pursuant to the franchise agreement's choice of law clause.[6] *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008) ("[T]he validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute."); *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction

---

[6] Defendants do not concede that Illinois law applies, but for purposes of the motion to dismiss do not argue that federal or any other state law should be used instead.

whose law governs the rest of the contract in which the clause appears, rather than making the court apply two different bodies of law in the same case." (citations omitted)); *see also Jackson v. Payday Fin., LLC*, 764 F.3d 765, 775–76 (7th Cir. 2014). Illinois law treats forum selection clauses as *prima facie* valid and enforces them unless the opposing party, in this case Defendants, shows that enforcement would be unreasonable under the circumstances. *IFC Credit Corp. v. Rieker Shoe Corp.*, 881 N.E.2d 382, 389, 378 Ill. App. 3d 77, 317 Ill. Dec. 214 (2007). Illinois courts treat forum selection clauses "reached through arm's length negotiation between experienced and sophisticated business people" as enforceable absent compelling circumstances but have noted that clauses "contained in boilerplate language indicat[e] unequal bargaining power." *Id.* In determining whether to enforce the forum selection clause as reasonable, Illinois courts look to six factors:

> (1) the law that governs the formation and construction of the contract; (2) the residency of the parties; (3) the place of execution and/or performance of the contract; (4) the location of the parties and their witnesses; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for.

*Rieker Shoe Corp.*, 881 N.E.2d at 389–90.

Here, considering these factors as a whole, the Court finds enforcement of the forum selection clause reasonable. The first factor favors Illinois, as the contract includes a choice of law clause indicating that state law claims will be governed by Illinois law.[7] The second factor is neutral, as Defendants are Arizona residents, while Rosati's and RFSI are Illinois corporations and residents. Anthem Way, although an Arizona corporation, has its principal place of business in Illinois. Defendants argue that Rosati's should be viewed as an Arizona resident because it

---

[7] The choice of law clause does include a carve-out, providing that the franchise agreement is not subject to the Illinois Franchise Disclosure Act, 815 Ill. Comp. Stat. 705/1 *et seq.*, and indicating that federal trademark claims are governed by federal trademark law, a proposition of law that should be uncontroversial.

has sufficiently engaged in business in Arizona so as to subject itself to general jurisdiction in that state, including by establishing twenty-two franchises in Arizona, auditing and inspecting those franchises, and employing two individuals in Arizona to conduct Rosati's operations in Arizona and on the west coast. But this does not tip the scale in favor of Arizona. The third factor favors Arizona, as the franchise agreement appears to have been executed in and was to be performed in Arizona, although Rosati's was to benefit in Illinois. The fourth factor may slightly favor Arizona, though the parties have not set out potential witness lists. The individual Defendants are located in Arizona and the broker and escrow officer involved in the underlying purchase by Fire It Up of the Rosati's franchise are in Arizona. Defendants claim that two Rosati's employees, Tim McCarthy and Ron Perry, are in Arizona, but these potential witnesses are under Rosati's control and could be brought before the Court here in Illinois. The Court does not know where representatives of Anthem Way are located but presumes that those and the remaining Rosati's representatives are located in Illinois.

Defendants claim that litigating in Illinois is particularly inconvenient because Doukas is suffering from serious medical conditions and undergoing kidney dialysis, requiring close medical attention from his doctors in Arizona, making him unable to travel. Defendants also argue that the Court does not have subpoena power over witnesses in Arizona, meaning that securing live testimony of the Arizona witnesses at trial would be difficult. *See* Fed. R. Civ. P. 45(c)(1)(A). But "mere inconvenience does not provide a basis for voiding a forum selection clause." *Rieker Shoe Corp.*, 881 N.E.2d at 390; *Brandt v. MillerCoors, LLC*, 993 N.E.2d 116, 121, 2013 IL App (1st) 120431, 373 Ill. Dec. 116 (2013) (logistical or financial hurdles are not enough to void forum selection clause where witness testimony can be obtained through depositions). Although the Court acknowledges that it will be inconvenient for Defendants to

litigate in this district, just as it might be inconvenient for Plaintiffs to litigate in Arizona, the Court does not find that it will be so inconvenient that enforcement of the forum selection clause would deprive Defendants of their day in court, particularly where there is no evidence that they were unaware of the requirement of litigating in Illinois if a dispute arose. *See Dace Int'l Inc. v. Apple Computer, Inc.*, 655 N.E.2d 974, 977, 275 Ill. App. 3d 234, 211 Ill. Dec. 591 (1995) (party must show that litigating in chosen forum would be so inconvenient that there is "no real opportunity to litigate the issues in a fair manner and that enforcement of the clause is tantamount to depriving the [party opposing enforcement of] access to the courts").

Finally, the Court must consider whether the parties equally bargained for the clause. Defendants argue that they were unable to negotiate the terms of the franchise agreement, with the forum selection clause included in the agreement as boilerplate. But "the fact that they did not object to or attempt to negotiate the clause is no reason to invalidate it." *Rieker Shoe Corp.*, 881 N.E.2d at 390. Although the individual Defendants attempt to minimize their business experience, they were sufficiently sophisticated to form Fire It Up as a limited liability corporation and made representations on online review websites that their family had over thirty years of experience in the pizza business. *See id.* ("They were business entities as opposed to ordinary consumers, and this court is not persuaded that they were in need of protection when contracting for business services. Most of the defendants are corporations, a business form that suggests a certain level of sophistication."). Nonetheless, the Court acknowledges the presence of the individual Defendants, the fact that Defendants maintain that they were without legal representation in entering the franchise agreement, and that they may not have the level of business sophistication as a major company, apparently having formed Fire It Up to operate a Rosati's franchise. But Defendants are far from the California solo accountant starting her own

10

small business whose forum selection clause in a lease for mailing equipment was found unreasonable because there was no evidence that she had "any particular expertise or equivalent bargaining power" in the office equipment business and she only learned at the last minute of the presence of the Illinois corporation, having dealt almost exclusively with a local California intermediary. *Mellon First United Leasing v. Hansen*, 705 N.E.2d 121, 125–26, 301 Ill. App. 3d 1041, 235 Ill. Dec. 508 (1998). And *Mellon* has been criticized to the extent it fashions a sliding scale for businesses of varying sophistication, with courts instead holding "business entities to their contractual bargains" regardless of their relative size or sophistication. *See Rieker Shoe Corp.*, 881 N.E.2d at 394 ("*Mellon* has limited practical application, and we are not inclined to fashion some type of business-sophistication standard out of nebulous factors like small, newly minted businesses or lack of expertise concerning the particular equipment or service leased."); *Dace Int'l Inc.*, 655 N.E.2d at 977–78 (enforcing forum selection clause despite different sizes of two corporations based on the fact they were both "accustomed to negotiation and practice in the computer industry," noting that "merely requiring Dace to accept the clause as a condition or cost of doing business is not necessarily objectionable"). Moreover, the element of surprise present in *Mellon* is missing in this case, as all franchise documents make it clear that Rosati's is an Illinois corporation based in Illinois, and the forum selection clause was highlighted in the franchise disclosure document, which Fire It Up received over two weeks before signing the franchise agreement. The franchise disclosure document also advised Fire It Up to review the franchise agreement carefully and with an attorney or other advisor, and Defendants' decision not to obtain representation in the process does not make the forum selection clause unreasonable. *See Tel-Nick, Inc. v. Compath, Inc.*, No. 02 C 9198, 2003 WL 1394613, at *3 (N.D. Ill. Mar. 19, 2003) ("[T]he fact that Tek-Nik chose to contractually bind itself without the

11

benefit of legal counsel does not implicate public policy concerns; no public policy of Illinois is compromised by allowing parties to contractually bind themselves without representation."). Thus, the Court does not find that Defendants have established unequal bargaining power. *See GPS USA, Inc. v. Performance Powdercoating*, 26 N.E.3d 574, 584, 2015 IL App (2d) 131190, 389 Ill. Dec. 484 (2015) (refusing to find unequal bargaining power, noting that "[a] failure to negotiate . . . does not equate to an inability to do so" and that the fact that party is "a small mom and pop company" does not "reveal anything about [that party's] capacity to bargain"). Taken as a whole, the Court does not find that Defendants have provided a compelling reason to find the forum selection clause unreasonable.

In a related argument, Defendants contend that the forum selection clause is unenforceable because it is unconscionable. *See Jackson*, 764 F.3d at 778. The clause may be procedurally unconscionable if it "is so difficult to find, read, or understand that [Defendants] cannot fairly be said to have been aware [they] [were] agreeing to it," taking into account any "lack of bargaining power." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622, 222 Ill. 2d 75, 305 Ill. Dec. 15 (2006). Factors considered in determining whether the clause is procedurally unconscionable include "whether each party had the opportunity to understand the terms of the contract, whether important terms were hidden in a maze of fine print, and all of the circumstances surrounding the formation of the contract." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647, 242 Ill. 2d 48, 350 Ill. Dec. 847 (2011) (citations omitted) (internal quotation marks omitted). The Court has already addressed the issue of unequal bargaining power. Defendants mainly argue that the forum selection clause is procedurally unconscionable because of certain alleged misrepresentations surrounding the transaction that led them to believe they had purchased certain property that they later found out belonged to the landlord. But whether

misrepresentations were made is immaterial to the procedural unconscionability analysis and rather is an issue for the merits to be eventually asserted by way of a counterclaim or third party claim against those involved in the alleged deception.[8]

Defendants also argue, however, that the franchise agreement's forum selection clause is hard to find, read, and understand, as it is located on the twenty-ninth page of the franchise agreement and the choice of law provision is not clear as to whether Arizona or Illinois law should apply. But despite being on the twenty-ninth page, the provision's heading calls attention to the fact that it addresses consent to jurisdiction. *See Brown v. Luxottica Retail N. Am. Inc.*, No. 09 C 7816, 2010 WL 3893820, at *3–4 (N.D. Ill. Sept. 29, 2010) (dispute resolution agreement on twenty-seventh page of fifty-one page employee handbook not hidden or buried). It also is of the same size print as the remainder of the agreement. *See Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 24, 157 Ill. App. 3d 85, 109 Ill. Dec. 400 (1987) (clause not hidden when in same size print as other contract provisions). Moreover, a representative of Fire It Up initialed every page of the agreement, further suggesting that the clause was not unknown to Defendants. *See Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 266, 223 Ill. 2d 1, 306 Ill. Dec. 157 (2006) (noting that plaintiffs initialed statement that they read terms and conditions in contract and there was no dispute that they had opportunity to read them). The franchise disclosure document, which was provided to Defendants at least two weeks before the franchise agreement was signed, highlighted on the second page in all capital letters that the agreement requires that disputes be resolved *only* in Illinois and mentioned the same later in the document. And while Defendants claim there is some confusion as to the choice of law provision, they do not argue

---

[8] Defendants do not argue that the forum selection clause is unenforceable because the agreement was allegedly entered into based on fraudulent representations, apparently recognizing that "[i]n order to invalidate the clause on the ground of fraud and overreaching, the fraud alleged must be specific to the forum selection clause itself." *Rieker Shoe Corp.*, 881 N.E.2d at 395.

13

that the language setting forth consent to jurisdiction and venue in Illinois is confusing or misleading. *See Stawski Distrib. Co. v. Browary Zywiec SA*, 349 F.3d 1023, 1025–26 (7th Cir. 2003) (finding forum selection clause enforceable but choice of law provision not). The clause bears no hallmarks of procedural unconscionability.

Substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed," with "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity" found to be indicative of substantive unconscionability. *Kinkel*, 857 N.E.2d at 267 (citation omitted) (internal quotation marks omitted). Defendants again argue that the franchise agreement is substantively unconscionable because Rosati's purported to convey property that it did not own, which induced Defendants to accept terms like the forum selection clause that put them at a significant disadvantage. But as discussed above, these arguments are relevant to the merits of the parties' positions, not to the enforceability of the forum selection clause. As the Court has already considered the bargaining power of the parties, finding that the imposition of the forum selection clause is not unreasonable, and Defendants do not otherwise contest the remainder of the obligations they assumed, the Court does not find the clause substantively unconscionable. Thus, the clause is enforceable, the Court has personal jurisdiction over Defendants, and venue is proper in this district.[9] *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1280 (7th Cir. 1997).

## II. Transfer to the District of Arizona

Defendants argue that, even if the forum selection clause is valid, the Court should transfer the case to the District of Arizona pursuant to 28 U.S.C. § 1404(a). Section 1404(a)

---

[9] Because the Court finds the forum selection clause enforceable, it need not address Plaintiffs' argument that long-arm jurisdiction exists over Defendants because of their contacts with Illinois.

provides that the Court may transfer venue to another district "for the convenience of the parties and witnesses, in the interest of justice." For transfer to be appropriate under § 1404(a), Defendants must demonstrate that "(1) venue is proper in this district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and the witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev v. Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007). The transfer decision is committed to the trial court's sound discretion, as the "weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

Here, the Court has already found that venue is proper in this district, and the parties do not dispute that venue is proper in the District of Arizona. Because the parties have agreed to a forum selection clause, they have "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 134 S. Ct. at 582; *IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 613 (7th Cir. 2006) (where there is a forum selection clause, transfer motion can be granted only "if there is inconvenience to some third party . . . or to the judicial system itself" (alteration in original) (quoting *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990))). As a result, the Court "may consider arguments about public-interest factors only." *Atl. Marine*, 134 S. Ct. at 582; *see also Qualtex Corp. v. ATM Grp. Corp.*, No. 13 C 08914, 2014 WL 3495602, at *2 (N.D. Ill. July 14, 2014) ("Despite a general presumption against transfer from the district agreed upon in a valid forum-selection clause, the presumption can be overcome on account of inconvenience to a third party (other than the movant) or to the judicial system itself.").

Here, Defendants argue that there will be numerous third party witnesses involved who are located in Arizona. They also argue that public interest factors warrant transferring this case to the District of Arizona. When considering the interest of justice component of § 1404(a), courts consider factors such as the likelihood of a speedy trial, each court's familiarity with the applicable law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Plaintiffs' main claims are for Lanham Act violations, with supplemental state law claims. All federal judges are equally capable of addressing the federal claims, *see Lewis v. Grote Indus., Inc.*, 841 F. Supp. 2d 1049, 1055 & n.2 (N.D. Ill. 2012) (collecting cases), and to the extent Illinois law applies, "federal judges routinely apply the law of a State other than the State in which they sit," *Atl. Marine*, 134 S. Ct. at 584. The relative caseloads in each district also are a neutral factor, with the average time from filing to disposition in civil cases in this district, 7.0 months, less than the average for the District of Arizona, 7.8 months, but the average time to trial in this district, 34.2 months, more than the average for the District of Arizona, 30.1 months.[10]

But Arizona's interest in the controversy tips the scale in favor of transfer to the District of Arizona. Although Illinois has an interest in protecting its corporations from trademark infringement, *see Sch. Stuff, Inc. v. Sch. Stuff, Inc.*, No. 00 C 5593, 2001 WL 558050, at *6 (N.D. Ill. May 21, 2001), Arizona also has a strong interest in ensuring that its residents are protected from any potential confusion that may result from any alleged trademark infringement or unfair competition, *see More Cupcakes, LLC v. Lovemore LLC*, No. 09 C 3555, 2009 WL 3152458, at *7 (N.D. Ill. Sept. 24, 2009); *Baymont Franchising, LLC v. Heartland Props., LLC*, No. 05-C-

---

[10] These figures come from the website of the United States Courts detailing federal court management statistics for the twelve-month period ending December 31, 2014. *See* http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2014.

16

0606, 2005 WL 2922225, at *3 (E.D. Wis. Nov. 3, 2005) (noting that if the public was confused as a result of alleged trademark infringement or inconvenienced as a result of alleged breach of contract, that harm occurred where the hotel was located in Kentucky, not in Wisconsin, where forum selection clause provided that litigation should be brought).  Additionally, the enforcement of any permanent injunctive relief would primarily take place in Arizona, favoring transfer as well.  *See id.*  Finally, Defendants argue throughout their briefing that their relationship with Plaintiffs was tainted with fraud, suggesting that counterclaims will be filed.  The issues surrounding the alleged fraud are of greater interest to Arizona than to Illinois.  *See Mercantile Capital Partners v. Agenzia Sports, Inc.*, No. 04 C 5571, 2005 WL 351926, at *6 (N.D. Ill. Feb. 10, 2005) (Illinois "has a very strong interest in litigating actions involving fraud occurring in Illinois"); *MJG Enters., Inc. v. Cloyd*, No. CV-10-0086-PHX-MHM, 2010 WL 3842222, at *12 (D. Ariz. Sept. 27, 2010) ("A state is deemed to have a strong interest in protecting its citizens against the tortious acts of others.").  Thus, notwithstanding the forum selection clause, the interests of justice and the convenience to non-party witnesseses demonstrate that transfer to the District of Arizona is warranted.

## CONCLUSION

For the foregoing reasons, Defendants' motion [36] is granted in part and denied in part.  The Clerk is directed to transfer this case to the District of Arizona pursuant to 28 U.S.C. § 1404(a).

Dated: June 29, 2015

_____
SARA L. ELLIS
United States District Judge